IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No.

| | | |
|---|---|---|
| Dianne K. Parker, | ) | |
|     Plaintiff, | ) | COMPLAINT |
| v. | ) | FRAUD |
| Carvana, LLC; | ) | UNFAIR TRADE PRACTICE |
| Bridgecrest Acceptance Corporation, | ) | N.C.G.S. 75-1.1 |
|     Defendants. | ) | (Jury Demanded) |
| | ) | |

## PARTIES

1. Plaintiff is a citizen and resident of Wayne County North Carolina.

2. Defendant Carvana, LLC (hereinafter Carvana) is an Arizona limited liability company, with its headquarters in Tempe, Arizona and with substantial business operations in North Carolina and a principle place of business at 1631 Navaho Dr., Raleigh, NC 27609-7532.

3. Defendant Bridgecrest Acceptance Corp., (hereinafter Bridgecrest) is an Arizona limited liability company, with its headquarters in Tempe, Arizona. The defendant Bridgecrest performs debt collection activities in the State of North Carolina.

## JURISDICTION

4. The United States District Court for the Eastern District of North Carolina has jurisdiction over this matter by virtue of the Diversity of Citizenship

1

provision of 28 U.S.C. § 1332, and the amount in controversy is in excess of $75,000.00.

## VENUE

5. Venue is appropriate in the United States District Court Eastern District of North Carolina under 28 U.S.C. § 1391 because acts or omissions alleged herein, as well as the resulting fraud, unfair trade practices, and damages, occurred within this district.

## FACTS

6. Plaintiff Parker purchased multiple vehicles from the defendant Carvana LLC, hereinafter Carvana, through the Carvana location at 1621 Navajo Dr. Raleigh, N.C. 27609.

7. On December 3 2020 plaintiff Parker traded into Carvana, a 2017 GMC Arcadia with vehicle identification number 1GKKNKLA0HZ269217, which is a vehicle that she had originally purchased from Carvana.

8. On December 3 2020 plaintiff Parker purchased from defendant Carvana a 2017 Cadillac XT5.

9. On June 3 2021 the plaintiff Parker traded in to the defendant Carvana, the 2017 Cadillac XT5.

10. On June 3 2021 plaintiff purchased a 2020 Cadillac XT5 from Carvana, VIN 1GYKNCRS8LZ168320.

2

11. On October 29 2021 the plaintiff received a letter from defendant Bridgecrest Acceptance Corporation dated October 22 2021, which advised her that the loan on the 2017 Cadillac XT5 had been "satisfied". Enclosed with the letter was the original copy of the 2017 XT5 contract marked "paid in full".

12. Because the defendant Carvana failed to submit the payoff to Bridgecrest in a timely fashion, the plaintiff was required to continue to make payments to Bridgecrest for the 2017 Cadillac XT5 from June 2021 until receipt of the October 2021 letter advising plaintiff that the 2017 XT5 contract was paid in full by the receipt of the payoff funds from Carvana.

13. Although the plaintiff traded in the 2017 GMC Arcadia to Carvana on December 3 2020, Carvana failed to transfer the title out of the plaintiff's name. Therefore the car remained in the name of the plaintiff, although it had been sold back to Carvana. Plaintiff was forced to continue to pay insurance on the 2017 GMC Arcadia for months after the vehicle was traded into Carvana.

14. Although the plaintiff traded in the 2017 Cadillac XT5 to Carvana on June 3 2021, Carvana failed to transfer the title back to Carvana. Therefore the car remained in the name of the plaintiff although it had been sold back to Carvana. The plaintiff was required to maintain insurance on the 2017 Cadillac XT5 through November 2021 as well as make payment on the vehicle until October 2021.

15. The June 3 2021 retail installment contract and security agreement signed by the plaintiff for the purchase of the 2020 Cadillac XT5, provided for 71 payments of $368.00 and one payment of $309.47. But however, prior to Carvana assigning the contract to the defendant Bridgecrest Acceptance Corporation, Carvana falsified the contract, by forging the plaintiff's name to a different contract that increased the payments from $368.00 per month to $405.00 per month.

**FIRST CAUSE OF ACTION**
**FRAUD - FORGERY**

16. Plaintiff incorporates paragraphs 1 through 15 as if fully set out herein.

17. The North Carolina Legislature adopted the Motor Vehicle Dealers and Manufacturers Licensing Law in part "to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this State." N.C. Gen. Stat. § 20-285 (2005).

18. Forgery is the fraudulent making or alteration of a writing to the prejudice of another man's rights or as the false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of legal liability.

19. Forgery is defined as the falsification of a paper, or the making of a false paper capable of effecting a fraud, with fraudulent intent.

4

20. A fraud perpetrated in altering a writing or in making a false writing tends directly to destroy the security which documents in writing give to transactions affecting the more important rights of persons privy to them.

21. Forgery is fraud.

22. The defendant Carvana committed forgery.

23. Defendant Carvana falsely made and or altered the contract and committed forgery by electronically signing the falsely made or altered contract with the plaintiff's signature without the plaintiff's knowledge, authorization, nor consent.

24. The defendant acted with fraudulent intent, as it knew at the time that it committed the act of forgery, that plaintiff had neither authorized nor consented to the alteration of the contract, and that plaintiff had not consented to nor authorized the forgery of plaintiff's signature on the falsified document.

25. After falsifying the document by changing the terms and forging plaintiff's signature on the document, the defendant Carvana then sent the document to the third-party financing entity, which then sought to and continues to attempt to enforce the falsified and forged document against the plaintiff. This has resulted in plaintiff being forced to make payments to which she never agreed in order to protect her credit rating and prevent the repossession of the vehicle which

she purchased under the terms listed in the original, unaltered, and unforged contract.

26. Plaintiff is entitled to recover punitive damages against the defendant.

27. The officers, directors, or managers of the defendant Carvana participated in or condoned the conduct constituting the fraud giving rise to punitive damages.

28. Plaintiff has been damaged by the defendant's conduct. She has incurred increased insurance costs, monthly payment coats, and she has suffered emotional and mental stress from the anxiety of trying to correct the wrongful conduct of the defendant, and threats of adverse credit reporting, collection efforts, and threats of repossession of the vehicle.

## SECOND CAUSE OF ACTION
## UNFAIR TRADE PRACTICE – FORGERY OF CONTRACT

29. Plaintiff incorporates paragraphs 1 through 28 as if fully set out herein.

30. Under N.C. Gen. Stat. § 75-1.1 unfair or deceptive acts or practices in or affecting commerce, are unlawful.

31. The defendant Carvana's action of forging plaintiff's signature on a document and changing the terms and then sending that document to a third party lender, to obtain the proceeds from the lender and so that the lender will try to enforce the contract against the consumer, is an unfair trade practice.

32. The conduct of the defendant as described herein, constitutes an unfair or deceptive act or practice that had both the tendency to deceiver and did in fact deceive.

33. The conduct was in or affecting commerce as it involved the sale and financing of a vehicle.

34. The conduct proximately caused actual injury to the plaintiff.

35. As a result of defendant's conduct plaintiff has had to pay an increased payment amount, increased loan amount, has been subject to threats of repossession of her automobile, has suffered mental and emotional distress and anxiety.

36. The defendant's conduct is unfair in that it offends established public policy. The defendant's conduct is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to the plaintiff and consumers of the defendant.

37. The conduct of the defendant is deceptive because it possesses the tendency or capacity to mislead, or creates the likelihood of deception, and did in fact mislead and deceive.

38. Plaintiff has been damaged by the defendant's conduct. She has incurred increased insurance costs, monthly payment coats, and she has suffered emotional and mental stress from the anxiety of trying to correct the wrongful conduct of the

7

defendant, and threats of adverse credit reporting, collection efforts, and threats of repossession of the vehicle.

## THIRD CAUSE OF ACTION
## UNFAIR TRADE PRACTICE – FAILURE TO REMOVE PLAINTIFF'S NAME FROM CAR TITLE OF VEHICLES PURCHASED FROM PLAINTIFF BY CARVANA

39. Plaintiff incorporates paragraphs 1 through 38 as if fully set out herein.

40. The North Carolina Legislature adopted the Motor Vehicle Dealers and Manufacturers Licensing Law in part "to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this State." N.C. Gen. Stat. § 20-285 (2005). This is a statement of the North Carolina public policy.

41. The Motor Vehicle Dealers and Manufacturers Licensing Law requires that the defendant Carvana notify the NCDMV that it has purchased a vehicle within 30 days. The purpose of the statue is to remove the vehicle from the seller's name such that the seller does not retain any liability or responsibility for the vehicle which it no longer owns.

42. The defendant Carvana however, intentionally violated the act by engaging the in a practice known as of "Title Jumping" or "Title Skipping". Carvana never notified the DMV that it had purchased the vehicle from plaintiff because it wished to avoid paying costs associated with transferring title, thereby engaging in a practice known as "title-skipping" or "title jumping".

43. The effect of the defendant's conduct was to cause the traded in vehicle to continue to be registered in the plaintiff's name. Plaintiff was forced to continue to pay for car insurance on the 2017 XT5 for months after June 3 2021, the date she traded it into Carvana.

44. Because of the defendant's conduct, the plaintiff was also worried and anxious that she may be held liable for the conduct of someone driving the trade in vehicle, because the vehicle continued to be titled in the plaintiff's name for months after June 3 2021.

45. The conduct of the defendant is an unfair or deceptive act or practice that had both the tendency to deceiver and did in fact deceive.

46. The conduct was in or affecting commerce as it involves the sale and purchase of a vehicle.

47. The conduct proximately caused actual injury to the plaintiff.

48. As a result of defendant's conduct plaintiff has had to pay insurance on the traded in vehicle for months after June 3 2021, and has suffered mental and emotional distress and anxiety related to her concerns of responsibility for the vehicle since it was still shown to be titled in her name.

49. The defendant's conduct is unfair in that it offends established public policy and state regulations.

9

50. The defendant's conduct is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to the plaintiff and consumers of the defendant.

51. The conduct of the defendant is deceptive because it possesses the tendency or capacity to mislead, or creates the likelihood of deception, and did in fact mislead and deceive.

52. Plaintiff has been damaged by the defendant's conduct. She has incurred increased insurance costs, monthly payment costs, and she has suffered emotional and mental stress from the anxiety of trying to correct the wrongful conduct of the defendant, and threats of adverse credit reporting, collection efforts, and threats of repossession of the vehicle.

## FOURTH CAUSE OF ACTION
## CIVIL CONSPIRACY – CARVANA and BRIDGECREST ACCEPTANCE CORP.

53. Plaintiff incorporates paragraphs 1 through 52 as if fully set out herein.

54. Pursuant to 16 CFR 433, the plaintiff is a consumer as defined by the regulation promulgated by the Federal Trade Commission.

55. Pursuant to 16 CFR 433, et seq., the defendant Bridgecrest Acceptance Corporation is a creditor, who in the ordinary course of business, lends purchase money or finances the sale of goods or services to consumers on a deferred

10

Case 5:22-cv-00090-M   Document 1   Filed 03/10/22   Page 10 of 14

payment basis; and who, for the purposes of a particular transaction, was not acting in the capacity of a credit card issuer.

56. The written documents referred to herein were allegedly assigned by the defendant Carvana to the defendant Bridgecrest Acceptance Corporation. The contracts state, "Any Holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof".

57. Plaintiff does hereby assert against the defendant Bridgecrest, all claims that the plaintiff has asserted against the defendant Carvana.

58. The actions of the defendant Bridgecrest and Carvana constitutes an illegal conspiracy against the plaintiff to commit fraud.

59. Bridgecrest knows of, benefits from, and participates in the defendant Carvana's practice of committing forgery, and of illegally changing document terms without the consent of the debtor, in this case, the plaintiff.

60. The conspiracy between the defendants is that after Carvana "assigns" the forged and illegally modified document to Bridgecrest, and that then Bridgecrest engages in unlawful collections activities against the debtor, in this case, the plaintiff.

61. Bridgecrest has engaged in collection activities against the plaintiff to illegally collect a payment in an amount that is not owed, to collect and enforce a

payment on a forged and illegally modified document, and to use oppressive collections tactics to include the threat of repossession and the threat of adverse credit reporting to get try to get the plaintiff to acquiesce in submitting the payment in amount to which plaintiff never agreed.

62. As a direct and proximate cause of the defendants' conspiracy, the Plaintiff has been subjected to financial loss and mental and emotional anguish.

63. The conduct of each defendant, and the defendants acting in concert, was malicious, wanton and willful.

64. Plaintiff is entitled to recover compensatory damages and punitive damages against the defendants.

65. Plaintiff has been damaged by the defendant's conduct. She has incurred increased insurance costs, monthly payment costs, and she has suffered emotional and mental stress from the anxiety of trying to correct the wrongful conduct of the defendant, threats of adverse credit reporting, threats of collection efforts, and threats of repossession of the vehicle.

66. Plaintiff demands recovery against defendants Carvana and Bridgecrest Acceptance Corporation, in the amount of and for the legal claims stated in this action against the defendants as a result of the civil conspiracy.

67. Plaintiff demands that defendant Bridgecrest Acceptance Corporation cease all collection activities, and that any and all derogatory credit information

12

regarding the fraudulent transaction be removed from the plaintiff's credit history and credit reports.

## JURY DEMAND

68. Plaintiff requests trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court:

1. That the Plaintiff have and recover from, and judgment be entered against, defendant Carvana and defendant Bridgecrest for compensatory damages and punitive damages in an amount to be determined by a jury, but in any event an amount in excess of two hundred and fifty thousand dollars.

2. That the defendants be ordered to cease and desist all illegal collection activities.

3. That the damage award against defendants for Unfair Trade Practices, be trebled pursuant to N.C.G.S. § 75-16;

4. That the Plaintiff recover the costs and expenses incurred in this action including attorney's fees, pursuant to N.C.G.S. § 75-16.1;

5. That the Plaintiff be granted a jury trial,

6. That the Plaintiff recover any further relief that the Court deems appropriate.

This the 10th day of March 2022.

                        Ralph Bryant Law Firm

                        /s/ Ralph T. Bryant, Jr.
                        Ralph T. Bryant, Jr.
                        (N.C. State Bar No. 18119)
                        313 Clifton St., Suite F
                        Greenville N.C. 27858
                        P.O. Box 723
                        Newport, North Carolina 28570
                        Phone: (252) 626-3267
                        Fax: (252) 294-1624
                        ralphbryant@ralphbryantlawfirm.com
                        www.ralphbryantlawfirm.com