IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00090-M

| | |
|---|---|
| DIANNE K. PARKER,<br><br>                Plaintiff,<br><br>vs.<br><br>CARVANA, LLC, BRIDGECREST ACCEPTANCE CORPORATION,<br><br>                Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS CARVANA, LLC AND BRIDGECREST ACCEPTANCE CORPORATION'S MOTION TO COMPEL ARBITRATION AND DISMISS (OR STAY) CASE** |

Defendants Carvana, LLC ("Carvana") and Bridgecrest Acceptance Corporation ("Bridgecrest", and together with Carvana, "Defendants"), pursuant to Local Rules 7.1(e) and 7.2, by and through the undersigned counsel, submit this memorandum of law in support of their Motion to Compel Arbitration and Dismiss (or Stay) Case.

**INTRODUCTION**

Plaintiff asserts claims for fraud, violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), and civil conspiracy arising out of Plaintiff's purchase of three vehicles from Carvana and Plaintiff's subsequent sale of two of those vehicles back to Carvana. As part of Plaintiff's purchase of *each* vehicle, Plaintiff entered into a Retail Purchase Agreement with Carvana and a five-page detailed and clearly explained Arbitration Agreement which is objectively fair and contains numerous consumer-friendly features. The Arbitration Agreements[1] expressly cover disputes "of every kind of nature," including claims arising out of the purchase and sale of the vehicles. The Arbitration Agreements are enforceable, and because Defendants

---

[1] Aside from the date of execution, all three arbitration agreements have identical operative provisions. Thus, for the sake of brevity, Defendants refer to the three arbitration agreements collectively as the "Arbitration Agreements." Further, Defendants' citation to one of the Arbitration Agreements, applies to all of the Arbitration Agreements.

have elected to arbitrate, arbitration is the exclusive venue for Plaintiff's claims asserted in this action. Accordingly, Defendants respectfully request that this Court issue an order compelling Plaintiff to arbitrate this matter in accordance with the terms of the Arbitration Agreements and dismissing the case, or in the alternative, staying this action pending the outcome of the arbitration.

## STATEMENT OF FACTS

On January 23, 2020, Plaintiff purchased a 2017 GMC Acadia, bearing vehicle identification number ("VIN") 1GKKNKLA0HZ269217 ("Vehicle 1") from Carvana. On December 3, 2020, Plaintiff purchased a 2017 Cadillac XT5 bearing VIN 1GYKNBRS8HZ237217 ("Vehicle 2") from Carvana and, as part of this purchase, Plaintiff traded in Vehicle 1 back to Carvana. (Compl., ECF No. 1, ¶¶ 7-8). On June 3, 2021, Plaintiff purchased a 2020 Cadillac XT5 bearing VIN 1GYKNCRS8LZ168320 ("Vehicle 3") and, as part of the purchase, Plaintiff traded in Vehicle 2 back to Carvana (*Id.* ¶¶ 9-10).

For all three transactions, Plaintiff entered into a Retail Purchase Agreement ("RPA") with Carvana. (Firman Decl. ¶¶ 4, 7, 10, 12).[2] The RPAs expressly incorporate the separately executed Arbitration Agreements by reference. (Firman Decl., Exhibits A, C, and E, at 3). The Arbitration Agreements define "Claim" as "any claim, dispute our [sic] controversy between [Plaintiff] and Us[3] arising from or related to one or more of the following: (a) The Contract; (b) The vehicle or the sale of the vehicle … (f) The financing terms … (h) The origination and servicing of the Contract…." (Firman Decl., Exhibits B, D, and F at 2). The term "Contract" under the Arbitration

---

[2] As a part of each of Plaintiff's purchases, she also entered into a Retail Installment Contract ("RIC"). Bridgecrest is the loan servicer for each RIC.

[3] As stated in more detail below, "Us" is defined as: "Carvana, any purchaser, assignee or servicer of the Contract… 'Us/We/Our' also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such party is named as a co-defendant with us in a Claim you assert." (Firman Decl., Exhibits B, D, and F, at p. 1).

2

Agreements refer to the RPA and the RIC. (*Id*. at 1). The Arbitration Agreements further provide that "'Claim' has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims . . . contract claims, negligence and tort claims." (*Id.* at 2).

The Arbitration Agreements also provide that the Federal Arbitration Act ("FAA") governs the agreement, and that both parties "agree that if we have a dispute, either of us can decide to resolve it by using arbitration." (Firman Decl., Exhibits B, D, and F). Additionally, pursuant to the terms of the Arbitration Agreements, Plaintiff had the right to reject the Arbitration Agreement for 30 days without affecting any other aspect of the transaction. (Firman Decl. ¶ 13). Plaintiff did not reject or opt out of any of the Arbitration Agreements. (Firman Decl. ¶¶ 14-16).

Counsel for Defendants have advised Plaintiff's counsel that the Arbitration Agreements cover Plaintiff's claims; however, Plaintiff has refused to arbitrate.

## ARGUMENT

### I. STANDARD OF REVIEW

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also* 9 U.S.C. § 2 ("A written provision . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Under the FAA, federal district courts do not have discretion, but are instead mandated, to compel arbitration on issues where the parties to a contract have executed an arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985). Given the strong federal policy favoring arbitration, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

3

Where a district court compels arbitration, the FAA requires any judicial proceedings be stayed pending the outcome of the arbitration. 9 U.S.C. § 3. As recognized by this Court, "[n]otwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Jackson v. Univ. of Phoenix, Inc.*, No. 5:13-CV-736-BO, 2014 WL 672852, at *2 (E.D.N.C. Feb. 20, 2014) (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709-10 (4th Cir. 2001)); *see also Cook v. Gen. Elec. Co. GE Aviation*, No. 5:09-CV-400-BO, 2010 WL 4885115, at *3 (E.D.N.C. Nov. 23, 2010) ("if all issues in a case are properly referable to arbitration, the Fourth Circuit has held that the case may be dismissed").

## II. THE FAA APPLIES AND REQUIRES ENFORCEMENT OF THE ARBITRATION AGREEMENT.

The Arbitration Agreements executed by Plaintiff expressly state that the FAA governs the agreements. (Firman Decl., Exhibits B, D, and F at 4). "In order to compel arbitration under the FAA, a party must show: (1) that a dispute between the parties exists, (2) that a contract between the parties includes an arbitration provision which would seem to cover the dispute, (3) that the contract or transaction at issue involves interstate or foreign commerce, and (4) that one party refuses to arbitrate the dispute." *Cook*, 2010 WL 4885115 at *3 (citing *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 500-01 (4th Cir. 2002)). All four elements are clearly met in this case.

### 1. A Dispute Exists Between The Parties.

A dispute does exist between the parties as evident by the filing of Plaintiff's Complaint. (ECF No.1). *See Cook*, 2010 WL 4885115 at *3 (finding that the filings in the case establish that the first element of the four-part *Adkins* test is satisfied). This fact cannot be disputed.

4

### 2. Plaintiff's Claims Are Covered By The Arbitration Agreement.

The Arbitration Agreements executed by Plaintiff[4], which are expressly incorporated by reference in the RPAs, provide that the term "claim" has the "broadest reasonable meaning" and defines the term as any dispute between the parties "arising from or related to one or more of the following: (a) The Contract; (b) The vehicle or the sale of the vehicle…(f) The financing terms … (h) The origination and servicing of the Contract…." (Firman Decl., Exhibits B, D, and F, at 2). The term "Contract" under the Arbitration Agreements refers to the RPA and the RIC. (*Id.* at 1).

Here, Plaintiff asserts claims for fraud and violation of the UDTPA for the alleged forgery of Plaintiff's name on a RIC. (*See generally* ECF No. 1). Plaintiff also asserts another claim for violation of the UDTPA based on allegations that Carvana intentionally failed to notify the DMV that it had repurchased one of the vehicles from Plaintiff and a claim for civil conspiracy predicated on allegations that Defendants together engaged in various unlawful activities stemming from the purchase and/or resale of the vehicles. (*Id.* at ¶¶ 39-67). Each of these claims arise out of the RPAs, RIC, sale of the vehicle, financing terms, and/or the origination and servicing of the "Contract" – all of which are covered under the terms of the Arbitration Agreements. Accordingly, it cannot be reasonably disputed that Plaintiff's claims are all subject to the Arbitration Agreement. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (broad arbitration clauses are upheld and enforced).

Moreover, because the Arbitration Agreements also provide that claims against certain entities other than Carvana will be subject to arbitration, (Firman Decl., Exhibits B, D, and F, at 1), Bridgecrest, as the servicer of Plaintiff's loan, is a proper party to arbitration. See *Paper Co. v.*

---

[4] Although Plaintiff alleges that Carvana forged one of the RICs, Plaintiff does not allege that the RPAs ***or Arbitration Agreements*** were forged. (*See generally* ECF No. 1).

5

*Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (While true that "a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, '[i]t does not follow … that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.'" Rather, "[w]ell established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties.") (citations omitted).

### 3. The Subject Matter Of The Complaint Involves Interstate Commerce.

The FAA defines "commerce" in part, as "commerce among the several States or with foreign nations." (9 U.S.C. § 1). It is beyond dispute that the agreements to arbitrate at issue in this litigation involve the purchase and resale of several vehicles over the internet by Plaintiff, a North Carolina resident, from Carvana, an Arizona limited liability company. (*See* Firman Decl. ¶ 2; ECF No. 1 ¶ 1; Firman Decl. ¶ 2; Firman Decl., Exhibits B, D, and F at 2). In fact, the Arbitration Agreement itself acknowledges that "the Contract involves a transaction in interstate commerce," such that "the Federal Arbitration Act ("FAA") governs this Agreement." (Firman Decl., Exhibits B, D, and F at 4).

Thus, under these facts, the Arbitration Agreements implicate the FAA because they involve interstate commerce between citizens of different states. (*See Newman ex rel. Wallace v. First Atl. Res. Corp.*, 170 F. Supp. 2d 585, 588 (M.D.N.C. 2001) ("Plaintiff and Defendants are citizens of different states and their interactions fall under the broad construction of the phrase 'involving commerce' under Section 2 of the [FAA]."); *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697-98 (4th Cir. 2012) ("in deciding to apply the FAA, we need not identify any specific effect upon interstate commerce, so long as in the aggregate the economic activity in question would represent a general practice … subject to federal control") (citations and

6

quotations omitted)).  *See also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013) (courts must "rigorously enforce" arbitration agreements according to their terms).

### 4. Plaintiff Refuses To Arbitrate.

As stated above, counsel for Defendants advised Plaintiff's counsel that the Arbitration Agreements cover Plaintiff's claims and Plaintiff has refused to arbitrate.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Compel Arbitration and dismiss or, in the alternative, stay the case.

Respectfully submitted this 2nd day of May, 2022.

    */s/Ashia Crooms-Carpenter*
    Ashia Crooms-Carpenter
    NELSON MULLINS RILEY &
    SCARBOROUGH LLP
    301 South College Street / 23rd Floor
    Charlotte, NC 28202
    (704) 417-3000
    Fax: (704) 377-4814
    ashia.capenter@nelsonmullins.com
    NC State Bar No. 54342

    *Attorney for Defendants Carvana, LLC and Bridgecrest Acceptance Corporation*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.2(f), the Rules of this Court, I certify that MEMORANDUM IN SUPPORT OF DEFENDANTS CARVANA, LLC AND BRIDGECREST ACCEPTANCE CORPORATION'S MOTION TO COMPEL ARBITRATION AND DISMISS (OR STAY) CASE, which was prepared using Times New Roman 12-point typeface, contains 1,789 words, excluding the parts of the document that are exempted by Rule 7.3(f)(1). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 2nd day of May 2022.

>  */s/Ashia Crooms-Carpenter*
>  Ashia Crooms-Carpenter
>  N.C. Bar No. 54342
>  NELSON MULLINS RILEY &
>  SCARBOROUGH LLP
>  ashia.carpenter@nelsonmullins.com
>  301 South College Street / 23rd Floor
>  Charlotte, NC 28202
>  Phone: (704) 417-3000
>  Fax: (704) 377-4814
>
>  ***Attorney for Carvana, LLC and Bridgecrest Credit Company, LLC***

**CERTIFICATE OF SERVICE**

I, Ashia Crooms-Carpenter, hereby certify that, on May 2, 2022 a true and correct copy of the foregoing was served upon Ralph T. Bryant, Jr. using the Court's CM/ECF System:

Ralph T. Bryant, Jr.
313 Clifton St., Suite F
Greenville, NC 27858
ralphbryant@ralphbryantlawfirm.com

*Attorney for Plaintiff*

This 2nd day of May, 2022.

*/s/Ashia Crooms-Carpenter*
**Attorney for Carvana, LLC and**
**Bridgecrest Acceptance Corporation**